# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Leroy London, : 
              Appellant : 
               : 
         v. : No. 1528 C.D. 2016 
               : ARGUED: October 19, 2017 
Zoning Board of Philadelphia : 


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE J. WESLEY OLER, JR., Senior Judge


OPINION BY
SENIOR JUDGE OLER, JR.            FILED: November 15, 2017

Leroy London (London) appeals from the order entered August 12, 2016 (Order), by the Court of Common Pleas of Philadelphia County (trial court), which denied London's statutory appeal from the decision of the City of Philadelphia's (City) Zoning Board of Adjustment (Board), denying London a use variance. The Order was issued after this Court remanded the matter to the trial court to address London's challenge to the constitutionality of Section 14-601(7)(a)(.1) of the City's Zoning Code (Code), which defines "adult cabaret." We affirm.

On August 21, 2013, London applied to the City's Department of Licenses & Inspections (L&I) for a zoning/use registration permit to operate an adult cabaret within an existing restaurant/bar (Property). The Property is located in a Neighborhood Commercial Mixed-Use-2 (CMX-2) Zoning District. On September 18, 2013, L&I issued a Notice of Refusal because an adult cabaret is not permitted

in the CMX-2 Zoning District, and because the proposed use, which is a regulated use, is not permitted within 500 feet of residential homes or a protected use (religious assembly, school).

London filed an appeal with the Board, seeking a variance. After a hearing, the Board affirmed L&I's decision and denied London's request for a variance. The Board refused to address London's constitutional challenges to Section 14-601(7)(a)(.1) of the Code, stating the Board was without jurisdiction to do so. London appealed to the trial court, which affirmed the denial of the variance but declined to address the constitutional issues for procedural reasons. London then appealed to this Court, which affirmed the trial court's order in part regarding the denial of the variance, but remanded the matter to the trial court for consideration of the constitutional issues. On remand, the trial court rejected London's constitutional challenges.

London now appeals to this Court.[1] London argues that Section 14-601(7)(a)(.1) of the Code is unconstitutional because it is both overbroad and vague.

Section 14-601(7)(a)(.1) of the Code defines an "adult cabaret" as follows:

> An adult club, eating and drinking establishment, theater, hall or similar place that may or may not serve alcoholic

---

[1] A challenge to the constitutionality of an ordinance raises a question of law. *See In re F.C. III*, 2 A.3d 1201 (Pa. 2010). As such, our standard of review is *de novo*, and our scope of review is plenary. *See id*.

The Board is not participating in this appeal.

2

beverages and features topless dancers, go-go dancers, exotic dancers, strippers, male or female impersonators or similar entertainers exhibiting specified anatomical areas or performing specified sexual activities, or dancing, performing or acting in a lewd, sexually erotic, exciting, or stimulating manner for patrons or viewers.

Under the Code, an "adult cabaret" is an "adult-oriented service" that falls within the "Commercial Services Use Category." Code § 14-601(7)(a)(.1). Adult-oriented services, such as an adult cabaret, are permitted by right in I-3 industrial districts and by special exception in I-2 (Medium Industrial) and ICMX (Industrial Commercial Mixed-Use) districts. Code § 14-602(5), Table 14-602-3. Additionally, adult-oriented services are among regulated uses. Code § 14-603(13)(a)(.2). These regulated uses are not permitted within zoning districts where such use is not expressly allowed, within 1,000 feet of any other existing regulated use or any SP-ENT (Entertainment, Special Purpose) zoning district, within 500 feet of any residential district or SP-INS (Institutional, Special Purpose) district, or within 500 feet of the nearest lot line containing any protected use. Code § 14-603(13)(b)(.1). Protected uses include schools, churches and public playgrounds. Code § 14-203(249).

Nude dancing is a form of expressive conduct entitled to constitutional protection. *Pap's A.M. v. City of Erie*, 812 A.2d 591 (Pa. 2002). However, the United States Supreme Court has upheld zoning with respect to sexually oriented businesses where the zoning ordinance did not ban adult theaters altogether but merely regulated their location. *Renton v. Playtime Theaters, Inc.*, 475 U.S. 41 (1986). The Supreme Court ruled that where an ordinance is a time, place and

3

manner restriction designed to address the problematic secondary effects associated with sexually oriented businesses, the regulation is permissible. *Id.*

London does not challenge the City's authority to zone sexually oriented businesses and acknowledges that nude dancing "falls only within the outer ambit of the First Amendment's protections." (London's brief at 9.) However, London argues that Section 14-601(7)(a)(.1) is unconstitutional under the First Amendment of the United States Constitution and Article I, Section 7 of the Pennsylvania Constitution, because it is both overbroad and vague.[2]

"[A]ny party challenging the constitutionality of a statute must meet a heavy burden, for we presume legislation to be constitutional absent a demonstration that the statute 'clearly, palpably, and plainly' violates the Constitution." *DePaul v. Commonwealth*, 969 A.2d 536, 545 (Pa. 2009) (citation omitted). "The presumption that legislative enactments are constitutional is strong." *Id.*; *see Borough of New*

---

[2] London suggests that the ordinance at issue here is subject to strict scrutiny analysis under *Pap's*. London is incorrect. In *Pap's*, strict scrutiny applied because the ordinance at issue pertained to a complete prohibition on nude dancing and its purpose was to suppress protected expression. *Pap's*, 812 A.2d at 612. Further, in *Pap's*, our Supreme Court noted that restrictions that, for example, limit nude entertainment to certain hours or require that it be dispersed throughout the city could be viewed as content-neutral restrictions on the time, place and manner and would not trigger strict scrutiny. *Id.* at 612-13. The ordinance at issue here is not a complete prohibition on sexually oriented businesses. Rather, it is a content-neutral time, place and manner regulation. *See Renton* (holding that an ordinance that does not ban adult theaters altogether but merely restricts their location is analyzed as a time, place and manner regulation). As such, it is subject to an intermediate level of scrutiny. *Cf. Renton* (stating inquiry for time, place and manner regulations is whether the ordinance is designed to serve a substantial governmental interest and allows for reasonable alternative avenues of communication). In any event, the level of scrutiny is irrelevant given the nature of London's challenges. The City does not need to justify the regulation of adult oriented business; rather, we must determine only whether the ordinance is overbroad or vague.

4

*Bloomfield v. Wagner*, 35 A.3d 839 (Pa. Cmwlth. 2012) (stating ordinances enjoy the presumption of validity). "All doubts are to be resolved in favor of finding that the legislative enactment passes constitutional muster." *DePaul*, 969 A.2d at 545. "Moreover, statutes are to be construed whenever possible to uphold their constitutionality." *Id*. at 546 (quotation marks and citation omitted); *see Kadash v. City of Williamsport*, 340 A.2d 617 (Pa. Cmwlth. 1975) (stating that where a reasonable interpretation can be adopted and such interpretation would save the constitutionality of an ordinance, it is the court's duty to adopt that interpretation).

## OVERBREADTH

Under the overbreadth doctrine, "a statute is facially invalid if it prohibits a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292 (2008). The "overbreadth [must] be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Id*. (emphasis in original). "Invalidation for overbreadth is strong medicine that is not to be casually employed." *Id*. at 293 (quotation marks and citation omitted). "A narrowing construction can save an otherwise unconstitutional statute by eliminating the statute's substantial overbreadth." *Conchatta Inc. v. Miller*, 458 F.3d 258, 263 (3d Cir. 2006). "If a statute is 'readily susceptible' to a limiting interpretation that would make it constitutional, the statute must be upheld …." *Id*. at 263 (quoting *Virginia v. American Booksellers Association, Inc.*, 484 U.S. 383, 397 (1988)).

London argues that the ordinance is overbroad because it reaches beyond its legitimate sweep in that it does not apply solely to nude dancing, but also to a variety of performances and actions, such as plays and musicals, that are entitled

5

to full constitutional protection. Extracting several terms and phrases from the context of the ordinance, London argues that the City cannot show that any negative secondary effects can be tied to "male or female impersonators or similar entertainers" who act, dance, or perform in an "exciting" or "stimulating" manner in order to justify the restrictions under the ordinance. London also argues that the restriction on "similar entertainers exhibiting specified anatomical areas or performing specified sexual activities" is overbroad, as it places restrictions on belly dancing or flamenco dancing or drag queen shows.[3]

We will first focus on the phrase "male or female impersonators or similar entertainers." When interpreting an ordinance, undefined words and phrases are to be construed according to their common and approved usage. *Bradley v. South Londonderry Township*, 440 A.2d 665 (Pa. Cmwlth. 1982); *see* Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1903(a); *cf. Kohl v. New Sewickley Township Zoning Hearing Board*, 108 A.3d 961 (Pa. Cmwlth. 2015) (stating that the rules of statutory construction apply to ordinances as well as statutes). A male impersonator is defined as "[a] female who impersonates a male on the stage."[4] A female impersonator is defined as "a male entertainer who plays

---

[3] Generally a party may assert only violations of his or her own rights. However, this standard has been relaxed in the context of First Amendment challenges because of a judicial assumption that a statute's existence may cause others to refrain from constitutionally protected speech or expression. *American Booksellers Association,* 484 U.S. at 392-93; *see also Williams*.

[4] https://en.oxforddictionaries.com/definition/male_impersonator (last visited Oct. 23, 2017).

6

the role of a woman (as in vaudeville)."[5]  When taken in isolation, these terms could include actors in a play.  In context, however, these terms are narrowed by rules of construction.  The canon of *noscitur a sociis* "counsels that a word is given more precise content by the neighboring words with which it is associated."  *Williams*, 553 U.S. at 294.  Here, the phrase "male or female impersonators" is part of a list, which includes topless dancers, go-go dancers, exotic dancers and strippers, terms which pertain to sexually oriented entertainment.[6]

Likewise, the phrase "similar entertainers" is limited by its context, and these same preceding words.  "Similar entertainers" is a general phrase preceded by a list of a class of persons.  "General words shall be construed to take their meanings and be restricted by preceding particular words."  *See* Section 1903(b) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1903(b).

More importantly, however, the scope of these terms or phrases is limited by the activities that the "male or female impersonators or similar entertainers" must be performing in order for the establishment to be considered an "adult cabaret."  In other words, one cannot stop reading after the phrase "male or female impersonators or similar entertainers."  Specifically, the regulation continues

---

[5]  https://www.merriam-webster.com/dictionary/female%20impersonator  (last visited Oct. 23, 2017).

[6] "Topless" is defined as "wearing no clothing on the upper body."  https://www.merriam-webster.com/dictionary/topless (last visited Oct. 23, 2017).   A go-go dancer is defined as one who is "employed to entertain in a disco · go-go dancers."  https://www.merriam-webster.com/dictionary/go-go (last visited Oct. 23, 2017).  Exotic dancers are defined as "of or relating to striptease · exotic dancing."  https://www.merriam-webster.com/dictionary/exotic (last visited Oct. 23, 2017).  A stripper is "one who strips," "stripteaser."  https://www.merriam-webster.com/dictionary/stripper (last visited Oct. 23, 2017).  A striptease is "a burlesque act in which a performer removes clothing piece by piece."  https://www.merriam-webster.com/dictionary/striptease (last visited Oct. 23, 2017).

7

on to provide that the "male or female impersonators or similar entertainers" must be: (1) "exhibiting specified anatomical areas"; or (2) "performing specified sexual activities"; or (3) "dancing, performing or acting in a lewd, sexually erotic, exciting, or stimulating manner for patrons or viewers." Code § 14-601(7)(a)(.1).

> The Code defines "specified anatomical areas" as follows:
>
> > Includes less than completely and opaquely covered: Human genitals, pubic region, buttocks, female breasts below a point immediately above the top of the areola, and human male genitals in a discernibly turgid state, even if completely and opaquely covered.

Code § 14-203(305).

> The Code defines "specified sexual activities" as follows:
>
> > Includes human genitals in a state of sexual stimulation or arousal, acts of human masturbation, sexual intercourse or sodomy, fondling or other erotic touching of human genitals, pubic region, buttocks, or female breasts.

Code § 14-203(306). These two definitions limit the reach of the ordinance to "male or female impersonators or similar entertainers" presenting sexually oriented entertainment.

With respect to "male or female impersonators or similar entertainers" who "danc[e], perform[] or act[] in a lewd, sexually erotic, exciting, or stimulating manner for patrons or viewers," London focuses on the words "exciting" and "stimulating." Reading these words in context and as restricted by the preceding terms, a reasonable person would conclude that the ordinance is confined to sexually

8

oriented entertainment.[7] *See Commonwealth v. Stock*, 499 A.2d 308 (Pa. Super. 1985) (construing the word "show" in the statute as restricted by the words preceding it).

Lastly, the ordinance provides that the establishment must "feature" this type of entertainment. A "feature" is "a prominent part or characteristic."[8] Thus, the sexual component must be a prominent part of the entertainment.

When Section 14-601(7)(a)(.1) is read in its entirety, and the challenged words and phrases ("male or female impersonators or similar entertainers," who act, dance, or perform in an "exciting" or "stimulating" manner) are read in context, it is reasonable to interpret an "adult cabaret" as being limited to sexually oriented entertainment. As such, the Code's definition of "adult cabaret" does not adversely affect a "substantial" amount of protected speech relative to its "plainly legitimate sweep" of imposing a "time, manner, place" regulation on sexually oriented businesses within the City. *See Renton*; *Stock*. Therefore, it is not overbroad.

## VAGUENESS

"A law is void on its face if it is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *Fabio v. Civil Service Commission of City of Philadelphia*, 414 A.2d 82, 84 (Pa.

---

[7] Even if there were some ambiguity, the ordinance is readily susceptible to a limiting construction confining these terms to sexually oriented entertainment. As such, we would have to adopt that construction where such a reasonable interpretation would save the constitutionality of the ordinance. *See Kadash*; *Commonwealth v. Stock*, 499 A.2d 308 (Pa. Super. 1985).

[8] https://www.merriam-webster.com/dictionary/feature (last visited Oct. 23, 2017).

1980) (quotation marks and citation omitted). "The void for vagueness doctrine incorporates the due process notions of fair notice or warning." *Id*. at 85; *see Williams* (stating the vagueness doctrine is an outgrowth of the Due Process Clause of the Fifth Amendment). "But perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Williams*, 553 U.S. at 304 (quotation marks and citation omitted). Additionally, "[a]lthough at first blush a law may appear vague on its face and those subject to it without fair notice,… it may withstand a constitutional challenge if it has been narrowed by judicial interpretation, custom and usage." *Fabio*, 414 A.2d at 85.

For the same reasons set forth above, when the challenged phrases are read in context with the entire definition, Section 14-601(7)(a)(.1) is not vague.

Accordingly, for the foregoing reasons, we affirm the trial court's order.

_____
J. WESLEY OLER, JR., Senior Judge

Judge Cohn Jubelirer did not participate in the decision of this case.

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Leroy London,                       :

          Appellant      :

                            :

          v.                :  No. 1528 C.D. 2016

                            :

Zoning Board of Philadelphia   :

# O R D E R

AND NOW, this 15th day of November, 2017, the Order of the Court of Common Pleas of Philadelphia County, entered August 12, 2016, is hereby affirmed.

_____
J. WESLEY OLER, JR., Senior Judge