IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fred Heffelfinger, Jr. a/k/a Fred Brown,  :
                                  Appellant   :
                                                       :
        v.                                             :    No. 144 C.D. 2020
                                                       :    Submitted: December 7, 2020
Tioga Township Zoning Hearing Board  :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge[1]
                    HONORABLE J. ANDREW CROMPTON, Judge
                    HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON                             FILED:  January 12, 2021


            Before this Court is the appeal of Fred Heffelfinger, Jr. a/k/a Fred Brown (Brown) from a January 6, 2020 order (Order) of the Court of Common Pleas of Tioga County (trial court), affirming a decision of the Tioga Township (Township) Zoning Hearing Board (Board) that Brown was operating an adult cabaret in violation of the Township Zoning Ordinance.[2]

---

[1] The decision in this case was reached prior to January 4, 2021, when Judge Brobson became President Judge.

[2] Tioga Township Zoning Ordinance, §§100-1500, adopted by the Board of Supervisors of Tioga Township, Tioga County, Pennsylvania, on May 10, 2005.

# I.    Background

On December 11, 2017, the Solicitor for the Township issued an Enforcement Notice to Brown regarding his property at 17795 Route 287, Tioga, Tioga Township, Tioga County, Pennsylvania (Property).[3] Reproduced Record (R.R.) at 1a. The Enforcement Notice states, in pertinent part, as follows:

> Violations:    Owning and operating an adult entertainment establishment in a Commercial/Industrial District in violation of the uses provided for in Article V of the [Township] Zoning Ordinance[4] and the [trial court] [o]rder of August 9, 2017;[5] Owning and operating an adult entertainment establishment without appropriate conditional use approval, in violation of Article V and §706[6] of the [Township] Zoning Ordinance and the above-referenced [trial court] [o]rder of August 9, 2017 . . . .
>
> You have the right to appeal to the [Board] within ten (10) days of your receipt of this Notice. Your appeal must comply with Article XI[7] of

---

[3] The Record reveals that Brown operates a business on the Property known as "Fred's Gentlemen's Club" and that the establishment was apparently also known at one time as "Fred's Woodshed," among other names. R.R. at 52a-53a.

[4] Tioga Township Zoning Ordinance, Article V, is a chart that, in pertinent part, indicates that an "Adult Entertainment Establishment" is considered a "conditional use" in the Township's "Special Agricultural/Industrial" zone only. R.R. at 147a.

[5] In its August 9, 2017 order, the trial court denied Brown's appeal of an October 13, 2016 notice from the Board that he was operating his Property in violation of the Township Zoning Ordinance. Brown had earlier applied (on November 2, 2015) for a variance, which was denied by the Board. R.R. at 83a-88a.

[6] Section 706 of the Township Zoning Ordinance explains the process by which the Township considers an application for a conditional use, and also notes that "[t]he [Board] shall render a decision on the application and any conditions to be required as part of an approved application within 45 days of receipt of the application." R.R. at 165a.

[7] Article XI of the Township Zoning Ordinance is titled "Zoning Hearing Board" and addresses the "[c]reation, membership and organization" of the Board as well as the Board's
**(Footnote continued on next page…)**

the [Township] Zoning Ordinance and all other relevant provisions of the [Township] Zoning Ordinance and the [Pennsylvania] Municipalities Planning Code [(MPC)[8]] . . . .

R.R. at 1a.

On January 3, 2018, Brown filed a "Response to Enforcement Notice" asserting, among other things, that he was in full compliance with the Township Zoning Ordinance. R.R. at 4a. On May 3, 2018, a hearing was held before the Board. R.R. at 8a. At the hearing, the Township presented three witnesses, who testified to what they observed while at the Property on various occasions. *Id*. Brown describes the Property at issue as being "used as a 'club' type activity with patrons being charged an admission fee, giving them the right to listen to DJs, observe women dancing, play pool, darts or electronic games of all types." Brown's Br. at 7.

The Board issued a decision on June 8, 2018. R.R. at 77a-82a. In its decision, the Board found

> [a]ll three witnesses for the [Township] Supervisors testified consistently that they were familiar with what is known as Fred's a/k/a/ Fred's Gentlemen's Club . . . . They agreed that there was a $15.00 cover charge for admission. They all saw that there were female dancers wearing bikinis [who] danced on stage providing entertainment to the customers. The witnesses all agreed that the dancing was done on a pole and that after the dancing was concluded on stage, that the

"[j]urisdiction and functions," "[h]earings," "[t]ermination and modification of permit," "[p]arties appellant before the board," "[a]pplication and fees," and "[s]pecial exceptions." In regard to the Board's jurisdiction, Section 1101 of Article XI states: "[t]he [Board] shall have exclusive jurisdiction to hear and render decisions of applications for variances and special exceptions, and certain challenges and appeals in accordance with applicable requirements of Article IX of the Pennsylvania Municipalities Planning Code (Act 247 of 1968, as amended)." R.R. at 179a-80a.

[8] Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101-11202.

dancers interacted with the patrons in the seating area. The witnesses were also able to recall that upon the payment of an additional $40.00 that the customer would be able to go back into one of the private rooms with a dancer. [One of the witnesses] saw maybe six (6) girls working as dancers in February and March of 2017.[9] The dancers would hang and spin around a pole. Dancers would take tips from customers with their mouths.

R.R. at 78a.

The Board noted that another witness described the entertainment as "sexy dancing, and then the dancers would do sexy moves to get tips." *Id*. In regard to the third witness, the Board stated:

> The third witness for the [Township] Supervisors . . . who was last at Fred's on February 17, 2018, . . . observed the female dancers going up and dancing on stage for the patrons. [He] testified that the dancers used brass poles to dance around and then the dancers would lie on the dance floor making sexually provocative-type moves . . . . He saw the dancers on their hands and knees putting their butts up in the air and lying down. [His] best description was that it was just sexual-type dancing.
>
> [The witness] further testified that there were interactions between the customers and the dancers in the customary practice of tipping the dancers. [The witness testified he] was on the dance floor giving tips to the dancers when one of the dancers asked him to put a dollar bill up in his collar and she bent over putting her breasts towards the front of his face and reaching in with her mouth and pulling the dollar bill out. [The witness] explained there was contact with her breasts touching his face when she was removing the dollar bill.
>
> [The witness] also observed some of the customers going back to [a] private room area for private one-on-one dances, which were sold to the customers at $40.00 each.

R.R. at 78a-79a.

---

[9] This witness testified that he was present at Brown's establishment in February and March of 2018, not 2017, as stated in the Board's decision. *See* R.R. at 19a.

The Board further stated:

Article III, Section 301B of the [Township] Zoning Ordinance defines an [A]dult [C]abaret as a club which features live entertainment distinguished or characterized by an emphasis on sexual conduct. The regulations of Section 704.2 of the [Township Zoning] Ordinance also define Adult Cabaret as . . . [a] cabaret that features topless dancers, go-go dancers, strippers, male or female impersonators or similar entertainers for observation by patrons. The Board is of the opinion that [Brown's] use of the dancers is consistent with this definition and he is operating an adult cabaret in the Commercial/Industrial District of [the Township] in violation of the [Township Zoning] Ordinance.

Our conclusion is in favor of the [Board] and against [Brown], since the supervisors have met their requirement of proof with regard to the Adult Cabaret section of the [Township] Zoning Ordinance.

R.R. at 81a.

On June 21, 2018, Brown appealed the Board's decision to the trial court, asserting that the evidence presented to the Board did not "support a finding that the activities occurring on [the Property] constitute the operation of an adult cabaret" because it did not establish that the permitted entertainment was "characterized by an emphasis on sexy dancing, sexual moves, and/or conduct." R.R. at 74a-75a. Brown further asserted that the Board's decision was not "rendered in a timely fashion." R.R. at 75a.

Following its receipt of briefs from the parties, the trial court issued a decision and Order dated January 6, 2020. In its decision, the trial court stated:

Reference is made to the [MPC] and in particular 53 P.S. [§]10909(3),[10] which provides [in] pertinent part for a Zoning Hearing

[10] This is a reference to Section 909.1(a)(3) of the MPC, which reads: "The zoning hearing board shall have exclusive jurisdiction to hear and render final adjudications in the following matters: . . . (3) [a]ppeals from the determination of the [Z]oning [O]fficer, including, but not **(Footnote continued on next page…)**

5

Board to hear "appeals from the determination of the zoning officer including, but not limited to . . . ."

The enforcement action in this case was commenced by the [T]ownship [S]olicitor and thereafter the initial appeal to the [Board] was appropriate. The issue then becomes one of the proper procedure to follow from an adverse decision of that [B]oard. Section 11001[-]A [of the MPC, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §11001-A,] makes it clear that the procedure[s] of the [MPC] are the . . . "exclusive mode for securing review of any decision rendered pursuant to Article [IX of the MPC] [(relating to land use appeals)] or deemed to have been made under [the MPC]." The following [Section 1002-A of the MPC, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §11002-A,] specifies that all appeals under Article [IX] [of the MPC] shall be taken to [a court of common pleas] within 30 days.

By contrast the [Township] Zoning Ordinance provides in section 1006[11] for enforcement by the Township Solicitor if there is not compliance with an enforcement notice. Here, however, [Brown] filed the appeal to [the trial court] from the [Board]. He is now in the peculiar position of arguing a lack of court jurisdiction for a matter which he himself appealed. He cannot have it both way [sic]. In addition, the state law cited above trumps the local ordinance that is the proper procedure. Of note is that this entire procedure was in fact done through the [T]ownship [S]olicitor.

R.R. at 108a-09a.

As to the substance of Brown's argument, the trial court noted that the Township presented several witnesses who testified to "pole dancing" by women wearing bikinis, "sexy" dancing for tips, and a customer laying on the stage and a

---

limited to, the granting or denial of any permit, or failure to act on the application therefore, the issuance of any cease and desist order or the registration or refusal to register any nonconforming use, structure or lot." Section 909.1(a)(3) was added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10909.1(a)(3).

[11] This Section of the Township Zoning Ordinance is titled "Prosecution of violation" and reads, in pertinent part: "If the enforcement notice is not complied with, the Zoning Officer shall request the Township Board of Supervisors to authorize the Township Solicitor to institute appropriate proceedings to prosecute such violations . . . ." *See* R.R. at 178a.

dancer removing money from his mouth, as well as from his "fly-area." R.R. at 109a. The trial court further noted that testimony revealed that patrons of Fred's Gentlemen's Club are allowed on stage and that a dancer was observed rubbing a female customer's clothed breasts.[12] R.R. at 29a, 109a. In addition, testimony revealed that the establishment "offers private dances where the customer is alone with a dancer in a private booth," although the customer who testified to this also acknowledged that touching the dancers was not permitted. R.R. at 109a-10a. In regard to the testimony of one of the Township's witnesses, the trial court stated that "[a] situation was also described where a dancer put money in his collar, after which a dancer bent in front of his face to remove the money with her mouth. In the process, her breasts were place[d] directly in the patron's face." R.R. at 110a.

The trial court determined:

> Here there is a clear sexual orientation to the activities of the dancers, in violation of the Adult Cabaret section of the [Township Zoning] [O]rdinance, section B.4.,[13] as detailed on pages 3 and 4 of the [Board's] decision. The [Township Zoning] [O]rdinance specifically mentions go-go dancers, strippers and impersonators in Section [704.2]

---

[12] We note that the witness who specifically testified to this latter point also testified that he was present at Fred's Gentlemen's Club on December 1, 2017. R.R. at 27a.

[13] The Township Zoning Ordinance follows a somewhat unorthodox numbering scheme. Section 704.2 is the "Definitions" subsection of "Section 704: Adult entertainment establishment regulations." Under Section 704.2, number 3 is the definition of "Adult bookstore." Under number 3, there is a number 1 and then a "B," with no preceding letter "A," followed by number 4, which is the definition of "Adult Cabaret" referenced throughout our Opinion. However, the "B" that precedes the definition of "Adult Cabaret" appears to be further description of the kinds of items in the stock of an "Adult bookstore," rather than anything related to the definition of "Adult Cabaret." Thus, we note that any references to Section 704.2 or its subsections, however denoted by the parties, the trial court, or this Court, herein, are intended to be references to the definition of "Adult Cabaret" in Section 704 of the Township Zoning Ordinance. *See* R.R. at 158a-59a.

B.4. There is clearly an emphasis on sexual conduct, reinforced by the available private dancers for extra money. Here there is a clear violation of the [Township Zoning] [O]rdinance based on the record of proceedings submitted to this court.

R.R. at 109a-10a.

A timely appeal was filed to this Court on February 6, 2020.[14] R.R. at 119a.

## II. Arguments

## A. Brown's Arguments

Section 1005 of the Township Zoning Ordinance states:

Where the Zoning Officer finds that any provisions of the [Township Zoning] Ordinance are being violated, he shall initiate enforcement proceedings by sending an enforcement notice to appropriate parties in accordance with Article VI of the [MPC] . . . . As specified in the [MPC], the enforcement notice shall state the nature of the violation, the actions and deadline dates for achieving compliance, possible enforcement proceedings, and other information.

Township Zoning Ordinance, §1005 titled "Enforcement notice"; R.R. at 178a.

Section 1006 of the Township Zoning Ordinance states:

If the enforcement notice is not complied with, the Zoning Officer shall request the Township Board of Supervisors to authorize the Township Solicitor to institute appropriate proceedings to prosecute such violations. Such proceedings are provided for and shall be in accordance with . . . the [MPC] . . . .

Township Zoning Ordinance, §1006 titled "Prosecution of violation"; R.R. at 178a.

---

[14] The Commonwealth Court's scope of review in zoning cases where, as here, the trial court did not take any additional evidence, is limited to determining whether the Board committed an error of law or manifest abuse of discretion. *De Cray v. Zoning Hearing Bd. of Upper Saucon Tp.*, 599 A.2d 286 (Pa. Cmwlth. 1991). The Board abuses its discretion if its findings are not supported by substantial evidence, *i.e.*, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637 (Pa. 1983).

8

Brown argues that, in the present matter, there is no evidence that the Township's Zoning Officer "requested the Township Board of Supervisors to authorize the Township Solicitor to institute appropriate proceedings to prosecute the alleged violation of the [Township Zoning] Ordinance." Brown's Br. at 22. Brown asserts that the proceeding before the Board was initiated by his filing of an appeal from the Enforcement Notice "out of an excess of caution," but that he was "not conceding that the procedure was proper." *Id.*

Brown acknowledges that the MPC, at 53 P.S. §10616.1(d), Section 616.1(d) of the MPC, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10616.1(d), grants zoning hearing boards jurisdiction to entertain enforcement notice appeals, but he argues that this section does not specify how a property owner "gets to the zoning hearing board." Brown's Br. at 22. Brown asserts that, here the Township Zoning Ordinance is specific that it is the responsibility of the Zoning Officer to request that the Township's Solicitor initiate the action to prosecute violations and that this did not occur in the present matter. Citing *Bernhard v. Bernhard*, 668 A.2d 546 (Pa. Super. 1995), Brown argues, "the [Board] was without proper subject matter jurisdiction which, of course, may be raised at any time in any manner and even *sua sponte* by the Court." Brown's Br. at 22-23.

In addition, Brown argues that the Township Zoning Ordinance contains conflicting definitions of the term "Adult Cabaret." Brown's Br. at 9. Brown notes that the [Township Zoning] Ordinance defines an "Adult Cabaret" as "an establishment, club, tavern, restaurant, theater or hall which features live entertainment distinguished or characterized by an emphasis on sexual conduct or sexually explicit nudity." Brown's Br. at 9 (quoting Section 301B of the Township Zoning Ordinance; R.R. at 135a). Brown also notes that Section 704 of the

Township Zoning Ordinance, titled "Adult entertainment establishment regulations," defines "Adult Cabaret" at Section 704.2.4. as:

> (1) [a]n establishment devoted to adult entertainment, either with or without a liquor license, presenting material distinguished or characterized by an emphasis on matter depicting, describing, or relating to sexual activities or anatomical genital areas; (2) a cabaret that features topless dancers, go-go dancers, strippers, male or female impersonators, or similar entertainers for observation by patrons.

Township Zoning Ordinance §704.2.4.; R.R. at 159a.

Brown argues that the above-referenced regulation is "*ultra vires* in that it goes beyond the definition set forth in the legislative portion of the [Township Zoning] Ordinance and purports to ban activity which would have no relationship to sexual activity or nudity." Brown's Br. at 10. Brown contends that, "in order to qualify as an Adult Cabaret, there must be an *emphasis* on sexual conduct or sexually explicit nudity" and that a club featuring go-go dancers who are fully clothed, and merely dancing, does not meet the definition of Adult Cabaret. Brown's Br. at 15-16 (emphasis in original).

Brown further argues that one of the witnesses before the Board testified that the dancers wore shirts when offstage, that the dancers wore "regular bikinis," rather than thongs, and that he was not allowed to touch the dancer with whom he went into a "private room." Brown's Br. at 16. In addition, Brown argues that this witness's testimony related to events which he observed after the date of the Enforcement Notice and, thus, it is not relevant to the current matter. Brown's Br. at 17. Brown also contends that "[t]here was no evidence presented to indicate that sexy dancing was emphasized or occurred on a regular basis," adding "[t]here [was]

a disc jockey, pool tables and other activities available from 11:00 at night until 3:00 in the morning." Brown's Br. at 19.

In sum, Brown states: "three witnesses testified that they were on the premises a total of four times, observed no nudity but, rather sexy-type dancing . . . . There was no evidence . . . to indicate that sexy dancing was emphasized or occurred on a regular basis. . . ." Brown's Br. at 19. Brown emphasizes that two of the three witnesses were on the Property *after* the date of the Enforcement Notice, *i.e.*, December 11, 2017, stating "[t]he burden is on the Township to show that adult entertainment was being carried on or about December 11, 2017." *Id*. at 19.

Brown argues that "the quantum of proof in the instant case falls far short of the clear and convincing proof required to end or limit [Brown's] use of his property." *Id*. at 20. Querying as to whether the Radio City Rockettes, as an example, would be considered adult entertainment, Brown asserts that "[c]ertainly, fully clothed young ladies engaged in pole or other dancing are not engaged in conduct which emphasizes sexual activity. Further, there is no evidence whatsoever of nudity." *Id*. In addition, Brown argues that the Township was required to show that "the majority of time in the establishment is devoted to what the [O]rdinance describes as adult entertainment and the emphasis is on sexual activity or nudity," but that "[t]he testimony completely [failed] to rise to that level." *Id*. at 20-21.

## B. The Board's Arguments

The Board argues that the Township Zoning Ordinance, and/or its action, is not *ultra vires* as asserted by Brown. Citing *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986), the Board states "[r]egulations limiting [a]dult [e]ntertainment to certain zoned areas are permissible content-neutral, time, place,

11

and manner restrictions." Board's Br. at 6. Further, "[i]n properly exercising their police powers in managing local areas, these state and local restrictions 'are acceptable so long as they are designed to serve a substantial government interest and do not unreasonably limit alternative avenues of communication.'" Board's Br. at 7 (quoting *Renton*, 475 U.S. at 47). The Board argues that, in the matter *sub judice*, the Township Zoning Ordinance does not completely ban adult entertainment establishments, but merely limits them to operation in Special Agricultural/Industrial zones. "Some concerns include the adverse effect on children who may live or go to school in an area, the spread of diseases, probable illegal sexual activities and crime increase nearby, and the general neighborhood deterioration." Board's Br. at 8. Quoting *London v. Zoning Board of Philadelphia*, 173 A.3d 847 (Pa. Cmwlth. 2017), the Board notes that this Court has stated that the definition of an adult cabaret is not overbroad if it: "'[i]s read in its entirety, and the challenged words and phrases ('male or female impersonators or similar entertainers,' who act, dance, or perform in an 'exciting' or 'stimulating' manner) are read in context, it is reasonable to interpret an 'adult cabaret' as being limited to sexually oriented entertainment.'" Board's Br. at 9 (quoting *London*, 173 A.3d at 853). The Board notes that, in *London*, we added that, "'[a]s such, the . . . definition of 'adult cabaret' [did] not adversely affect a 'substantial' amount of protected speech relative to its 'plainly legitimate sweep' of imposing a 'time, manner, place' regulation on sexually oriented businesses within the City.'" *Id*.

The Board asserts that the Township's definition of "Adult Cabaret" in Article VII, 704.2. "falls within the scope of the definition under [the Township] Zoning Ordinance Article III, 301[B] regulating entertainment characterized by an emphasis on sexual conduct." Board's Br. at 9. Section 301[B] of the Township

12

Zoning Ordinance reads: "ADULT CABARET – An establishment, club, tavern, restaurant, theater or hall which features live entertainment distinguished or characterized by an emphasis on sexual conduct or sexually explicit nudity." R.R. at 135a. The Board further argues that even if the Board or the trial court had determined that Section 704.2.4. was overbroad, the definition of "Adult Cabaret" in Article III of the Township Zoning Ordinance, as noted above, would control, and Brown's use of the Property "would still be in violation." Board's Br. at 9-10.

The Board asserts that the Township's regulations "are within its powers enumerated under the [Township] Zoning Ordinance and are not overbroad under federal, state, or local law." Board's Br. at 10. In addition, the Board asserts that "topless dancers, go-go dancers, strippers, male or female impersonators, or similar entertainers for observation by patrons," referenced in Section 704.2.4.(2) of the Township Zoning Ordinance, are merely examples of titles of employees at an adult cabaret and relates to the first part of the definition of "Adult Cabaret," which refers to an establishment characterized "by an emphasis on matter depicting, describing, or relating to sexual activities or anatomical genital areas." Board's Br. at 8-9 (quoting Section 704.2.4.(2) of the Township Zoning Ordinance).

As to Brown's contention that the Board did not have jurisdiction over his appeal because the Zoning Officer or Township failed to follow the prosecution procedures in Article X of the Township Zoning Ordinance, the Board notes that the Township's Solicitor began the enforcement action with the Board at the same time Brown appealed the Enforcement Notice. Board's Br. at 10-11. The Board states that, "[e]ven if [the Township's] Solicitor had not commenced an enforcement proceeding, [the Board] still had jurisdiction." Board's Br. at 11. The Board adds that the Enforcement Notice, here, "included required information like the nature of

13

the specific violation, [Brown's] right to appeal to the [Board] within a certain amount of time, and that continued nonconforming use of the property could result in sanctions" and that in these kinds of situations where a landowner appeals, pursuant to the MPC, "'[t]he zoning hearing board shall have exclusive jurisdiction to hear and render final adjudications in . . . [a]ppeals from the determination of the zoning officer, including, but not limited to, the issuance of any cease and desist order.'" Board's Br. at 11 (quoting 53 P.S. §10909.1(a)(3)). The Board adds that when it renders "an adverse decision, the landowner appeals to the [common pleas court] pursuant to . . . the MPC and . . . the [Township Zoning Ordinance]," and Brown "correctly appealed to [the trial court] within 30 days of [the Board's] decision." Board's Br. at 12-13.

As to the substance of Brown's appeal, the Board argues that the Township Zoning Ordinance does not require nudity to determine the existence of adult entertainment, and the three witnesses, whose testimony was unrebutted, "emphasized sexual conduct or activities" were ongoing at the Property. Board's Br. at 14. Further, Brown's business was named "Fred's Gentlemen's Club," and the witnesses provided consistent testimony such that it is apparent the entertainment at the Club was "conducted to emphasize sexual activity." *Id.* Accordingly, the Board argues that Brown's establishment would need to operate in a "Special Agricultural/Industrial" zone in order to continue to operate as is and otherwise, Brown is subject to fines for operating outside of such a zone. Board's Br. at 16.

### III. Discussion

Initially, we address Brown's contention that the Township Zoning Ordinance is "*ultra vires*," in that it goes beyond the definition set forth in the

legislative portion of the Township Zoning Ordinance and seemingly bans activity which would have no relationship to sexual activity or nudity. *See* Brown's Br. at 10. At the outset, we reiterate that "[i]n properly exercising their police powers in managing local areas, these state and local restrictions 'are acceptable so long as they are designed to serve a substantial government interest and do not unreasonably limit alternative avenues of communication.'" Board's Br. at 7 (quoting *Renton*, 475 U.S. at 47). As noted by the Board in the present matter, the Township Zoning Ordinance does not completely ban Adult Entertainment establishments but merely limits them to operation in Special Agricultural/Industrial zones. We concur with the Board that the reference to "topless dancers, go-go dancers, strippers, male or female impersonators, or similar entertainers for observation by patrons" in Section 704.2.4(2) of the Township Zoning Ordinance, provides examples of types of performers at an Adult Cabaret. This, in turn, offers elucidation to the first part of the definition relative to "an emphasis on matter depicting, describing, or relating to sexual activities or anatomical genital areas." *See* the Board's Br. at 8-9 (quoting Section 704.2.4(1) of the Township Zoning Ordinance). As we stated in *London*, "[t]he canon of *noscitur a sociis* 'counsels that a word is given more precise content by the neighboring words with which it is associated.'" *London*, 173 A.3d at 852 (quoting *U.S. v. Williams*, 553 U.S. 285, 294 (2008)). Further, Section 704.2 of the Township Zoning Ordinance specifically states: "[t]he following definitions are intended to supplement the definitions contained in Article III." R.R. at 159a.

In *London*, we stated that "[a] law is void on its face if it is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *London* at 853 (quoting *Fabio v. Civil Serv. Comm'n of City of Phila.*, 414 A.2d 82, 84 (Pa. 1980)). Here, there is no such vagueness. Further,

15

"perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *London,* 173 A.3d at 853 (quoting *Williams*, 553 U.S. at 304).

As to Brown's contention that the Board did not have jurisdiction over his appeal because the Zoning Officer or Township failed to follow the prosecution procedures in Article X of the Township Zoning Ordinance, we are unconvinced. The Enforcement Notice in the present matter included the nature of the violation, information about Brown's right to appeal to the Board, and a warning that continued nonconforming use of the Property could result in sanctions. Further, when a property owner appeals in such situations, "[t]he zoning hearing board shall have exclusive jurisdiction to hear and render final adjudications in . . . [a]ppeals from the determination of the zoning officer, including, but not limited to, . . . the issuance of any cease and desist order or the registration or refusal to register any nonconforming use . . . ." 53 P.S. §10909.1(a)(3). Here, Brown admittedly appealed the Enforcement Notice directly to the Board. The fact that this appeal may have preceded the action by the Township's Solicitor is of little consequence because, either way, the Board had exclusive jurisdiction to hear Brown's appeal, which it did. Subsequently, the Board issued a decision, and Brown appealed that decision to the trial court, per the MPC and the Township Zoning Ordinance. Accordingly, we see no material error in the appeal process followed in the present matter, especially in light of the Board's exclusive jurisdiction over such matters, the fact that Brown, himself, took his appeal to the Board, and that Brown received the due process to which he was entitled by law.

We next address whether Brown was operating an "Adult Cabaret" in violation of the Township Zoning Ordinance. The three witnesses who testified in

16

this matter each provided corroborating testimony that the dancers at Brown's Property were dressed in bikinis and were engaged in what each generally described as "sexy" dancing. The specific and unrefuted testimony of the witnesses leaves little room for doubt as to the nature of the performances or their provocative nature. We see no reason to recount the testimony summarized earlier in this Opinion. We reject Brown's contention that only one of the witnesses was a patron of his establishment around the time of the Enforcement Notice. Each testified to being present on the premises at various times in and around December 2017, and each one offered testimony that was in accord with the observations of the other. The three witnesses provided credible snapshots, over time, of the activities occurring on Brown's Property. It is unreasonable for Brown to suggest that somehow the Township was required to provide witnesses who could account for every minute of every day at the Property.

The testimony presented in this matter provides ample evidence of activities that emphasized and expressed sexual conduct. The Board is correct that nudity is not required, and we acknowledge there was no testimony that nudity was involved here. That said, we find Brown's comparison of the performers at his establishment to the Radio City Rockettes to be disingenuous in light of the fact that the Rockettes' performances are generally considered to be family-friendly entertainment, and the Rockettes do not offer dances in private rooms or perform acts such as rubbing a female customer's clothed breasts.

As this Court stated in *London*: "[w]hen interpreting an ordinance, undefined words and phrases are to be construed according to their common and approved usage." *London*, 173 A.3d at 851. The term "go-go dancer" is used specifically in Section 704.2.4.(2) of the Township Zoning Ordinance as one

17

example of a type of Adult Cabaret entertainer. A go-go dancer is defined as "a dancer who performs in places such as bars, dancing energetically in a sexually exciting manner while wearing very little clothing."[15] The dancers described by the witnesses in the current matter seem, to us, most likely to be examples of go-go dancers or, in the alternative, "similar entertainers for observation by patrons." Thus, the evidence leads us to conclude that dancing at the Property was "characterized by an emphasis on sexual conduct," and, thus, the trial court did not err in affirming the Board's determination that Brown is operating an adult cabaret in violation of the Township Zoning Ordinance.

## IV. Conclusion

Upon review of the evidence of record and the relevant statutory and case law, we see no error of law or abuse of discretion, and thus, the Order of the trial court is affirmed.

_____
J. ANDREW CROMPTON, Judge

---

[15] https://dictionary.cambridge.org/us/dictionary/english/go-go-dancer (last visited Jan. 11, 2021).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fred Heffelfinger, Jr. a/k/a Fred Brown, :
                              Appellant  :
                                         :
            v.                           :    No. 144 C.D. 2020
                                         :
Tioga Township Zoning Hearing Board  :


# **O R D E R**

 **AND NOW**, this 12th day of January 2021, the January 6, 2020 Order of the Court of Common Pleas of Tioga County is **AFFIRMED**.


         _____
         J. ANDREW CROMPTON, Judge