IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In the Matter of: | : | |
| Tricia Mezzacappa | : | |
| | : | |
| v. | : | No. 1229 C.D. 2021 |
| | : | |
| Northampton County, | : | |
| Appellant | : | Submitted: August 5, 2022 |

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                    HONORABLE ELLEN CEISLER, Judge
                    HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE CEISLER                                                    FILED:  April 6, 2023

Northampton County (County) appeals from the decision of the Court of Common Pleas of Northampton County (Trial Court) affirming a final determination by the Office of Open Records (Open Records), which directed the County to comply with a request for records pursuant to the Right-to-Know Law (RTKL).[1]  The Requester asked to obtain copies of all mug shots taken of inmates admitted to the Northampton County Prison during a three-month period in 2020.  The County maintains that the records are exempt from release by the Criminal History Record Information Act (CHRIA), 18 Pa.C.S. §§ 9101-9183, as well as the RTKL itself, and that the Trial Court failed to give proper consideration to the difficulties of fulfilling the request.  Upon review, we affirm.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-.3104.  One of Open Records' duties under the RTKL is to assign appeals officers to review, when challenged, decisions by local agencies in response to RTKL requests and issue orders and opinions on those challenges. *Allegheny Cnty. Dep't of Admin. Servs. v. A Second Chance, Inc.*, 13 A.3d 1025, 1027 n.1 (Pa. Cmwlth. 2011).

# I. Background

On December 28, 2020, Tricia Mezzacappa (Requester) submitted a RTKL request to the County for various records including "all mug[ ]shots taken of all inmates" taken at the prison, from October 2020 to the date of the request, including all inmates released on bail. Reproduced Record (R.R.) at 68a.[2] Pursuant to Section 902 of the RTKL, the County invoked a 30-day extension.[3] The County gave a full response via e-mail on February 3, 2021. *Id.* at 71a. While it delivered most of the other requested materials, the County declined to send the mug shots.[4] *Id.*

Requester appealed to Open Records, arguing that the mug shots constituted public records. *Id.* at 5a-6a. The County made three assertions in defense of its denial of the request. *Id.* at 20a-24a. First, it argued that it was unable to make "a good faith assessment to determine if the records requested are public records," due to the sheer breadth of the request, the short response time permitted by the RTKL, and the exemptions that may apply to some, or all, of the mug shots. *Id.* at 20a-21a. Second, the County argued that the mug shots constituted "identifiable descriptions,"

---

[2] The December 28, 2020 request followed an earlier one in which Requester only sought two mug shots. Although the underlying facts are substantially the same, and the issues identical, that request reached this Court as a separate matter. *See Mezzacappa v. Northampton Cnty.* (Pa. Cmwlth., No. 1312 C.D. 2021, filed April 6, 2023).

[3] Under certain circumstances, Section 902(a)-(b) permits an agency to extend its response time to a right-to-know request by 30 days with written notice to the requester. 65 P.S. § 67.902(a)-(b).

[4] Two other items in the request were denied by the County in its initial response: a list of correctional officers working at the prison on October 13-15, 2020, and e-mail messages from any county government e-mail address sent on those dates that included mug shots. Open Records ruled that those materials were exempt from release under the RTKL; the trial court affirmed. R.R. at 40a, 44a. Since Requester did not appeal part of the decision, it has been omitted from further discussion.

and therefore criminal history record information, under CHRIA.[5] The County maintained that, under CHRIA, criminal history record information could only be released to an individual by a "State or local police department." *Id.* at 23a (citing 18 Pa.C.S. § 9121(b)[6]). Consequently, the County argued, the mug shots were "statutorily exempt" under the RTKL.[7] R.R. at 27a.

The County also submitted an affidavit from David Penchishen, the prison's warden. Warden Penchishen attested that approximately 800 individuals were booked during the period in question, that "most" had their mug shots taken, and that criminal charges were then pending against "[m]any of them." *Id.* at 29a. Additionally, Warden Penchishen noted that the prison had no knowledge of the status of each criminal case against the inmates. *Id.*

In a final determination dated March 18, 2021, Open Records directed the County to release the mug shots to Requester. R.R. at 33a. Open Records explained

---

[5] Section 9102 of CHRIA defines criminal history record information as:

Information collected by criminal justice agencies concerning individuals, and arising from the initiation of a criminal proceeding, consisting of identifiable descriptions, dates and notations of arrests, indictments, informations or other formal criminal charges and any dispositions arising therefrom. The term does not include intelligence information, investigative information or treatment information, including medical and psychological information, or information and records specified in section 9104 (relating to scope).

18 Pa.C.S. § 9102.

[6] Section 9121(b) of CHRIA provides that "[c]riminal history record information shall be disseminated by a State or local police department to any individual or noncriminal justice agency only upon request." 18 Pa.C.S. § 9121(b). Section 9121(b)(1) permits the police department to charge a fee for the request, while Section 9121(b)(2) requires certain redactions to be made before the information is released. 18 Pa.C.S. § 9121(b)(1)-(2).

[7] Section 305 of the RTKL provides that records are not public if they are "exempt from disclosure under any other Federal or State law or regulation or judicial order or decree." 65 P.S. § 67.305.

that, in determining whether the request was sufficiently specific, it applied the three-part balancing test set forth in *Pa. Dep't of Educ. v. Pittsburgh Post-Gazette*, 119 A.3d 1121 (Pa. Cmwlth. 2015). Pursuant to *Post-Gazette*, Open Records must determine to what extent the request identifies (1) its subject matter, (2) the scope of the documents sought, and (3) the time frame for which records are sought. R.R. at 38a (citing *Post-Gazette*, 119 A.3d at 1125). Open Records determined that the request in the instant matter provided "a context to narrow the search," identified "a discrete group of documents," and covered "a limited time frame." R.R. at 38a-39a.

With respect to CHRIA, Open Records disagreed that the mug shots constituted criminal history record information under the statutory definition. *Id.* at 40a. In its determination, Open Records explained that it is possible for a mug shot image to *include* criminal history record information; however, the "picture itself is not protected by CHRIA." R.R. at 41a. If the mug shots did contain such information, the County would be free to redact it before releasing them. *Id.* at 42a. Additionally, Open Records noted "the numerous local and the state correctional systems that utilize inmate locator tools that disseminate mug shots" as further evidence that mug shots are public records. R.R. at 41a.

The County appealed to the Trial Court, which affirmed Open Records' determination. *See* Order of Court filed October 5, 2021 (Trial Court Order). The Trial Court agreed with Open Records that the request was sufficiently specific, and that CHRIA was not a bar to the mug shots' release. *Id.* This appeal followed.[8]

---

[8] On appeal from a lower court's decision on a RTKL request submitted to a local government agency, this Court conducts a *de novo* review of the lower court's conclusions of law and determines whether its findings of fact are supported by substantial evidence. *Kaplin v. Lower Merion Twp.*, 19 A.3d 1209, 1213 n.6 (Pa. Cmwlth. 2011) (citation omitted). Our scope of review under the RTKL is plenary. *Allegheny Cnty. Dep't of Admin. Servs. v. Parsons*, 61 A.3d 336, 342 (Pa. Cmwlth. 2013) (citation omitted).

## II. Issues

In what appears to be an issue of first impression, the County maintains that it is prohibited from releasing mug shots under both CHRIA and the RTKL. Alternatively, the County argues that the records are exempt from release under the RTKL itself. In addition, the County alleges that the Trial Court failed to properly consider the burdens of complying with the request. Lastly, the County argues that, while it is required under the RTKL to issue a "good faith response" to Requester, the nature of her request makes that impossible.

## III. Discussion

### A. Mug Shots Under CHRIA

The General Assembly enacted CHRIA in 1980 in order to "control the collection, maintenance, dissemination or receipt of criminal history record information." *King v. Bureau of Prof'l & Occupational Affairs, State Bd. of Bar Examiners*, 195 A.3d 315, 329 (Pa. Cmwlth. 2018). As noted above, Section 9102 of CHRIA defines criminal history record information as "[i]nformation collected by criminal justice agencies concerning individuals, and arising from the initiation of a criminal proceeding, consisting of identifiable descriptions, dates and notations of arrests, indictments, information or other formal criminal charges and any dispositions arising therefrom." 18 Pa.C.S. § 9102. When one criminal justice agency requests such records from another, Section 9121 provides that the records shall be shared free of charge. When requested by a non-criminal justice agency or an individual, Section 9121 instructs Commonwealth and local police departments to extract certain information from the records before releasing them.[9]

---

[9] Before a State or local police department disseminates criminal history record information to an individual or non-criminal justice agency, it shall extract all notations of arrests, indictments
**(Footnote continued on next page…)**

Instantly, the County argues that mug shots are "identifiable descriptions," and are subject to Section 9102's regulations. The County observes that "the essential purpose [for which] mug[ ]shots are taken in the first place" is to serve as identifiable descriptions. County's Br. at 13. Additionally, the County refers to the definition of "mug shot" in *Webster's New World College Dictionary* (5th edition, 2014), as "any of the photographs taken for police records of the face of a person under arrest." If mug shots are "police records," the County reasons, then they are obviously within CHRIA's definition of criminal history record information.[10] County's Br. at 13.

We disagree. The underlying premise of the County's proposed interpretation is that "identifiable descriptions" refers not only to information expressed in words and numbers, but to visual representations of a person or thing. That may be a plausible reading of the phrase merely on its own, but this Court must also consider the relevant context. *See MERSCORP, Inv. v. Delaware Cnty.*, 207 A.3d 855, 865 (Pa. 2019) (explaining that a phrase in a statute is to be read "with reference to the context in which [the words] appear" rather than by viewing it "in isolation").

The rule of statutory interpretation expressed by the maxim *noscitur a sociis* (literally, "it is known by its fellows") is that the meaning of a word may be indicated or controlled by those words with which it is associated. *S.A. by H.O. v. Pittsburgh Sch. Dist.*, 160 A.3d 940, 945 (Pa. Cmwlth. 2017) (citation omitted). Its purpose is to avoid ascribing to a word such a broad meaning that it is inconsistent with its

---

or other information relating to the initiation of criminal proceedings where: (i) three years have elapsed from the date of arrest; (ii) no conviction has occurred; and (iii) no proceedings are pending seeking a conviction. 18 Pa.C.S. § 9121(b)(1)-(2).

[10] The County further explains that CHRIA should be read in tandem with Section 305 of the RTKL itself, which exempts from release any record that is "exempt from disclosure under any other Federal or State law or regulation or judicial order or decree." 65 P.S. § 67.305(a).

accompanying words, thus giving unintended breadth to the legislature's acts. *Id.* Put succinctly, the rule of *noscitur a sociis* is that "[w]ords are known by the company they keep."[11] *Commonwealth by Kane v. New Founds., Inc.*, 182 A.3d 1059, 1073 n.10 (Pa. Cmwlth. 2018) (citing *Northway Village No. 3, Inc. v. Northway Props., Inc.*, 244 A.2d 47, 50 (Pa. 1968).

In the instance of Section 9121's definition of criminal history record information, "identifiable descriptions" is followed by "dates and notations of arrests, indictments, informations or other formal criminal charges and any dispositions arising therefrom"; that is, several types of records that contain strictly

---

[11] Our decision in *London v. Zoning Board of Philadelphia*, 173 A.3d 847 (Pa. Cmwlth. 2017), provides a recent illustration of how the rule is applied. At issue in that case was a local zoning provision that defined an "adult cabaret" as follows:

> [a]n adult club, eating and drinking establishment, theater, hall or similar place that may or may not serve alcoholic beverages and features topless dancers, go-go dancers, exotic dancers, strippers, male or female impersonators or similar entertainers exhibiting specified anatomical areas or performing specified sexual activities, or dancing, performing or acting in a lewd, sexually erotic, exciting, or stimulating manner for patrons or viewers.

*Id.* at 849-50 (citing Section 14-601(7)(a)(.1) of the Philadelphia Zoning Code). The appellant, whose request for a variance to open such a business had been denied, challenged the provision as an overbroad restriction on free expression. He argued, *inter alia*, that the inclusion of "male and female impersonators" encompassed a wide range of activities, such as plays and musicals, which should not be subject to the same "time, place, and manner" restrictions as more sexually oriented entertainment. *Id.* at 850.

This Court acknowledged that, "[w]hen taken in isolation, these terms could include actors in a play." *Id.* at 852. Applying the rule of *noscitur a sociis*, however, we determined that the phrase's placement in a list of terms including "topless dancers, go-go dancers, exotic dancers and strippers" narrowed the scope of "male and female impersonators" to similarly "sexually oriented entertainment." *Id.*

7

information expressed in words or numbers.[12]  Applying the *noscitur a sociis* principle and following well established principles of statutory construction, we conclude that "identifiable descriptions," too, refers to information expressed in words or numbers.  Had the General Assembly intended the phrase to encompass mug shots or other photographic images, it would have used more precise language to that effect.

Our interpretation is reinforced by the fact that the word "description" is most often used in reference to written or spoken language.  *Webster's New World College Dictionary* (5th ed. 2014), defines "description" as "the act, process, art, or technique of describing or picturing *in words*" or "a *statement or passage* that describes" (emphases added).  The use of the word "description" to refer to purely visual representations, though perhaps appropriate in some contexts, is more arcane and unfamiliar than the definition provided in *Webster's*.  We must presume that statutes employ words in their popular and plain everyday sense.  *Maierhoffer v. GLS Capital, Inc.*, 730 A.2d 547, 550 (Pa. Cmwlth. 1999).  Application of this principle further militates against the County's proposed interpretation.

Even if we agreed with the County on the intended meaning of "identifiable descriptions," CHRIA would still not prevent the release of the requested records.  Section 9121(b) does not prohibit the County's dissemination of criminal history record information.  The Superior Court considered an argument similar to the County's in *Commonwealth v. Copeland*, 723 A.2d 1049 (Pa. Super. 1998), *appeal denied*, 723 A.2d 1049 (Pa. 1999).  In *Copeland*, a criminal defendant demanded

---

[12] As Open Records correctly noted, it is possible for a mug shot image to include criminal history record information; however, the "picture itself is not protected by CHRIA."  R.R. at 41a. It also noted that if the mug shots did bear such information, the County would be free to redact it before releasing them.  *Id.* at 42a.

that a district attorney release the criminal histories of witnesses scheduled to testify against him. *Id.* at 1050. The district attorney refused, claiming (as the County does here) that under Section 9121(b), "only the police" can release criminal history record information. *Id.* at 1051. The Superior Court rejected that argument, holding:

> [Section 9121(b)] places an affirmative burden on the Commonwealth's state and local police forces to provide criminal history records upon request. Where a request is made by a noncriminal justice agency or individual, the police are entitled to charge a fee and are required to redact the records pursuant to the statute's provisions. *Nowhere does the Act prohibit* the district attorney's office from providing criminal history information to a defendant facing trial.

*Id.* (emphasis added).

Although not binding on this Court, our sister court's reading of Section 9121(b) is persuasive. The interpretation proposed by the district attorney in *Copeland*, and by the County in the instant matter, depends on a misreading of the word "only." Had the legislature intended police departments to be the exclusive disseminators of criminal history record information, "only" would have been placed earlier in the sentence, so as to modify "shall be disseminated" or "State or local police department." Its inclusion in the phrase "only upon request," at the sentence's end, simply reflects a legislative intent to prohibit a police department's release of information that an individual or non-criminal justice agency has not requested.

Underlying the County's proposed interpretation is the premise that, by referring to State and local police departments, Section 9121(b) implicitly imposes a blanket prohibition on the release of criminal history record information by any other agency. We disagree, as this Court is "on most occasions loath to find a prohibition by implication." *Appeal of Eureka Stone Quarry, Inc.*, 539 A.2d 1375, 1380 (Pa. Cmwlth. 1988). Rather, we shall assume that if the legislature had intended such a broad measure, it would have drafted statutory language to that

9

effect. Our interpretation is consistent with the "well[ ]settled maxim" that, "where the words of a statute are clear and free from ambiguity, the legislative intent is to be gleaned from those very words, and the plain language is not to be disregarded under the pretext of pursuing its spirit." *Const. Drive Partners, L.P. v. Dep't of Env't Prot.*, 247 A.3d 1198, 1207 (Pa. Cmwlth. 2021).

## B. Mug Shots and Section 708(b) of the RTKL

Since CHRIA is not a bar to the fulfillment of the request, we must next examine whether the records requested fall under any of the RTKL's own exceptions. Section 708(b)(16)(i)-(vi) provides that the following categories of records are "exempt from access" pursuant to the RTKL:

(i)    Complaints of potential criminal conduct other than a private criminal complaint.

(ii)    Investigative materials, notes, correspondence, videos and reports.

(iii)    A record that includes the identity of a confidential source or the identity of a suspect who has not been charged with an offense to whom confidentiality has been promised.

(iv)    A record that includes information made confidential by law or court order.

(v)    Victim information, including any information that would jeopardize the safety of the victim.

(vi)    A record that, if disclosed, would do any of the following:

(A)    Reveal the institution, progress or result of a criminal investigation, except the filing of criminal charges.

(B)    Deprive a person of the right to a fair trial or an impartial adjudication.

(C)    Impair the ability to locate a defendant or codefendant.

(D)    Hinder an agency's ability to secure an arrest, prosecution or conviction.

(E)    Endanger the life or physical safety of an individual.

65 P.S. § 67.708(b)(16)(i)-(vi). The County maintains that two of the above exceptions are applicable. First, it argues that mug shots are exempt from disclosure under Sections 708(b)(16)(vi)(A), since they are "taken as a result of charges and commitment and, as a result, inherently disclose the initiation of such investigations or proceedings." County's Br. at 19. Second, the County argues that they are exempt pursuant to Section 708(b)(16)(vi)(B), as they would deprive a defendant of "the right to a fair trial or impartial adjudication." *Id.* at 19 n.7.

Neither of the County's arguments is availing. As Section 708(b)(16)(vi)(A) states, records that *only* reveal the filing of criminal charges are not exempt from disclosure.[13] As Warden Penchishen acknowledges in his affidavit, the individuals depicted in the mug shots "have pending criminal charges that are currently being adjudicated by the Northampton County District Attorney." R.R. at 29a. Warden Penchishen further acknowledges that the prison itself does not have "independent knowledge of the status of such cases." *Id.* Without any such details, a mug shot does nothing more than support an inference that the depicted individual has been charged with an unspecified criminal offense or offenses. The County therefore fails to explain how a mug shot, alone, would fall under the Section 708(b)(16)(vi)(A) exception.

---

[13] *See also Commonwealth v. Upshur*, 924 A.2d 273, 282 (Pa. 2007) (observing that "any item that is filed with the court as part of the permanent record of a case and relied on in the course of judicial decision-making will be a public judicial record or document").

11

Regarding the claim that release of the mug shots would deprive the individuals depicted of the right to a fair trial, it should be noted that mug shots are typically barred from use at trial precisely because of the potential for unfair prejudice. *See Commonwealth v. Washington*, 927 A.2d 586, 605 (Pa. 2007) (holding that where a "jury could have reasonably inferred from the photographic evidence presented at trial that a defendant was involved in prior criminal activity, reversible error occurred"). We therefore disagree that a theoretical concern of prejudice at a possible future trial justifies denying the request, especially given that "exceptions to the disclosure of public records must be narrowly construed." *Port Auth. of Allegheny Cnty. v. Towne*, 174 A.3d 1167, 1170 (Pa. Cmwlth. 2017). Accordingly, we hold that the requested records are not exempt from release under any RTKL exception that the County has identified.

## C. The Burdens on the Responding Agency

Pursuant to the RTKL, a written record request shall "identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested." *Pa. State Police v. Off. of Open Recs.*, 995 A.2d 515, 516 n.2 (Pa. Cmwlth. 2010) (citing Section 703 of the RTKL, 65 P.S. § 67.703). The specificity of the request is measured by the three-part balancing test set forth in *Post-Gazette*: (1) its subject matter; (2) the scope of the documents sought; and (3) the timeframe for which records are sought. 119 A.3d at 1125. A request may be considered overly broad if it is so open-ended that it gives an agency little guidance regarding what to look for. *Montgomery Cnty. v. Iverson*, 50 A.3d 281, 283 (Pa. Cmwlth. 2012). Alternately, if the request seeks a clearly defined universe of documents, it will not be deemed overbroad even if it is burdensome. *Dep't of Env't Prot. v. Legere*, 50 A.3d 260, 265 (Pa. Cmwlth. 2012).

12

Instantly, the County alleges that Open Records and the Trial Court failed to give proper consideration to the burden imposed by the request. The County no longer maintains that Requester failed to specify a clearly defined universe of documents. Rather, the County maintains that the Trial Court should have assessed the burden in light of a variety of other factors, such as "law enforcement's potential interest in the records, a need for statutory compliance[,] and third[-]party interests in privacy in the context of a broad request seeking highly regulated information." County's Br. at 14-15.

Once again, the County's arguments are unavailing. Section 708(b) already provides several exceptions to the RTKL that protect law enforcement interests.[14] There is nothing in Section 708(b) to support the notion that law enforcement's mere "potential interest" in a record, without more, shields it from disclosure. The County's concern about third-party privacy interests is similarly misplaced. The RTKL already contains numerous exceptions protecting those interests as well, none of which is applicable to this case.[15] Finally, for reasons discussed in the previous

---

[14] In addition to the exceptions pertaining to criminal investigations under Section 708(b)(16), discussed previously, several others protect law enforcement interests. *See, e.g.*, 65 P.S. § 67.708(b)(2) (exempting from release records involving law enforcement activity if their disclosure threatened public safety); § 67.708(b)(6)(i)(c) (exempting home addresses of law enforcement officers); § 67.708(b)(6)(iii) (exempting information identifying an individual performing "an undercover or covert law enforcement activity").

[15] *See*, *e.g.*, 65 P.S. § 67.708(b)(1)(ii) (exempting from release records which would be "reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual"); § 67.708(b)(5) (exempting medical, psychiatric or psychological history or disability status); § 67.708(b)(6) (exempting personal identification data); § 67.708(b)(7) (exempting employment information); § 67.708(b)(12) (exempting public employees' personal work notes); § 67.708(b)(13) (exempting donor information); § 67.708(b)(14) (exempting unpublished academic material); § 67.708(b)(19) (exempting DNA and RNA records); § 67.708(b)(20) (exempting autopsy and postmortem records); § 67.708(b)(23) (exempting library borrowing history); § 67.708(b)(28) (exempting applications for social services **(Footnote continued on next page…)**

section, we disagree that the County's concern about "statutory compliance," by which it presumably refers to CHRIA, justifies refusal of the request.[16]

## D. The RTKL's "Good Faith Effort" Requirement

Finally, the County raises what it describes as an issue of first impression for this Court. It argues that Requester failed to tailor her request "in such a way as to permit a good faith review . . . as required by the RTKL." County's Br. at 15. The County refers to Section 901 of the RTKL, which provides that:

> Upon receipt of a written request for access to a record, an agency shall make a good faith effort to determine if the record requested is a public record, legislative record or financial record and whether the agency has possession, custody or control of the identified record, and to respond as promptly as possible under the circumstances existing at the time of the request.

65 P.S. § 67.901. The County argues that "a generic request for innumerable mug[ ]shots is not tailored to permit a good faith response or reasonable determinative

that identify an applicant); § 67.708(b)(29) (exempting correspondence between legislators and constituents); § 67.708(b)(30) (exempting records that personally identify minors). 65 P.S. § 67.708(b)(1)-(30).

[16] The County cites *Taha v. Bucks County, Pennsylvania*, 172 F. Supp. 3d 867 (E.D. Pa. 2016), as an example of the dangers of running afoul of CHRIA restrictions. In *Taha*, a class action, the defendant had disregarded a court order expunging the lead plaintiff's old criminal records, and posted the following information about him in a public, online database: "sex; date of birth; height; weight; race; hair color; eye color; citizenship; incarceration location; date committed to incarceration; release date; case number for the crime charged;" and criminal charges, along with a color photograph of the lead plaintiff. *Id.* at 869. The jury found the CHRIA violation to be willful because the defendant was aware of the court-ordered expungement, and awarded punitive damages. *See Taha v. Bucks Cnty., Pa.*, 408 F.Supp.3d 628, 633-634 (E.D. Pa. 2019).

We note that *Taha* is readily distinguishable from the instant matter. The most obvious difference, among many, is that Requester is seeking mug shots only. As Open Records observed in its determination, "the information that was disseminated [in *Taha*] was far more than just a photograph." R.R. at 40a.

review," particularly when the Northampton County District Attorney's interests might also be affected. *Id.* at 18.

Here, the County mischaracterizes the nature of the request. Contrary to its assertion, the mug shots requested are not "innumerable"; Warden Penchishen already determined that the request encompasses approximately 800 photographs. R.R. at 29a. The County also misstates the law, as the RTKL does not impose an affirmative duty on a requester to tailor a request so as to permit a good faith response. The only duty imposed by Section 901is on the agency itself, which it is to fulfill by supplying the requested records whenever possible. A requester who names government records with sufficient specificity, as Requester has clearly done in this case, has properly exercised her right to those records pursuant to the RTKL. The County therefore fails to point to any circumstances that preclude a good faith response.

In order to justify denying access to a requested record, the government agency bears the burden of proving, by a preponderance of the evidence, that one of the enumerated exceptions applies. *Bowling v. Off. of Open Recs.*, 75 A.3d 453, 457 (Pa. 2013) (citing Section 708(a) of the RTKL, 65 P.S. § 67.708(a)). The County has failed to identify any such exception in this case. In the absence of any supporting RTKL provision, the County is essentially asking this Court to create nebulous new exceptions to the right to access public records. Even if we were inclined to do so, that is not this Court's role.

## IV. Conclusion

The records sought by Requester do not fall under any of the exceptions listed in Section 708(b) of the RTKL, 65 P.S. § 67.708(b). Nor is their release prohibited

15

by any other statute that the County has identified.  Accordingly, we affirm the Trial Court.

_____
ELLEN CEISLER, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In the Matter of:                :
Tricia Mezzacappa          :
                                   :
         v.                    : No. 1229 C.D. 2021
                                     :
Northampton County,       :
             Appellant     :

# O R D E R

AND NOW, this 6th day of April, 2023, the order of the Court of Common Pleas of Northampton County in the above-captioned matter, dated October 5, 2021, is hereby AFFIRMED.

 

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In the Matter of: :
Tricia Mezzacappa :
: No. 1229 C.D. 2021
v. :
: Submitted: August 5, 2022
Northampton County, :
Appellant :

BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ELLEN CEISLER, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

*OPINION NOT REPORTED*

DISSENTING OPINION
BY JUDGE McCULLOUGH                                    FILED: April 6, 2023


Respectfully, I dissent for the reasons stated in my dissenting opinion
in the companion case *Tricia Mezzacappa v. Northampton County* (Pa. Cmwlth.,
No. 1312 C.D. 2021, filed April 6, 2023) (McCullough, J., dissenting).


                                          _____
                                          PATRICIA A. McCULLOUGH, Judge